JANICE E. MATZEN, Petitioner-Appellant, *v.* ROBERT MATZEN, JR., Respondent-Appellee.

Third District    No. 78-359

Opinion filed February 28, 1979.

Larry Hofreiter, of Ottawa, for appellant.

Timothy J. Creedon, III, of White & Marsh, of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This appeal is from a post-divorce order in which the Circuit Court of La Salle County allowed defendant Robert Matzen, Jr., an equitable credit of $6,413 against his child support arrearage of $6,875.

In 1968 plaintiff Janice Matzen (now Peterson) was granted a divorce from defendant after 10 years of marriage. She was awarded custody of their three children, namely Terryl, then aged 9; Carter, aged 7; and Robin, aged 5. Defendant was ordered to pay $65 per week "for the support of the minor children of the parties," but the order did not apportion the $65 between the three children. He was also given the right "to visit his children at reasonable times."

Defendant paid the support as ordered except for the weeks when one or more of the children was not living with plaintiff in Utica, Illinois; those weeks he reduced his payment by one-third ($21.33) for each child. The oldest daughter Terryl stayed with defendant in Mazon, Illinois, for five weeks during the summer of 1972, and again for 2½ years from July 1973 to January 1976. In July of 1976, all three children moved in with defendant. Carter returned to his mother in November 1976, and Robin returned in May of 1977. Robin ran away from home in April of 1978 and has since been made a ward of the court and placed in a foster home. Terryl remained with defendant until shortly before her marriage in January 1977.

Plaintiff filed a petition for a rule to show cause against defendant, claiming $6,874.50 in child-support arrearages as of the date of filing, June 6, 1978. Later she filed a petition requesting modification of the divorce decree by increasing the support payments. Defendant then petitioned for a decrease in support since only one child, Carter, remained in plaintiff's home, and in his answer to the petition for arrearages, he asserted the defense of equitable estoppel, alleging that during the periods when he had actual custody of one or more of the children, his expenses on behalf of the children increased in an amount equal to the unpaid support while plaintiff's expenses decreased in that amount.

At the hearing on these petitions, plaintiff testified that she never

agreed or consented to the removal of any of her children from her home, that each time she tried to persuade them to remain with her, that she never agreed to any reduction in support payments and that defendant once gave her some legal papers to sign which would have changed custody to him and eliminated her right to support but she tore them up and threw them away. She also stated that when Terryl left plaintiff's home in 1972 and in 1973, Terryl was mad because she didn't get her way and so she called her father to come for her which he did. Each time Terryl left without her mother's consent.

In July of 1976 all three children went to spend a weekend with defendant, and on Sunday defendant refused to bring them back. Plaintiff threatened to call the sheriff, and defendant threatened to see an attorney. Later that same day, he brought them home and, according to plaintiff, "They stormed in, packed their belongings and moved out." Plaintiff stated that it was all right for Terryl to go with him, saying, "I had already done without her for 2½ years and I knew there was nothing more that I could do for Terryl but I wanted the [other] kids home."

Plaintiff also testified that in her petition for an increase in support, she is asking for a reasonable sum for both Carter and Robin because she is liable for support to the Department of Children and Family Services for Robin. After listing her expenses for Carter's support, she stated that she needs $63 per week for each child, Robin and Carter, instead of the $21.65 she now gets for Carter. Plaintiff was unemployed at the time of the hearing but had earned about $10,000 each of the last three years as a Tupperware manager.

Defendant was first called by plaintiff under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) to testify to his earnings. In 1968 his gross income from Joliet Caterpillar was $12,645, and it has gradually increased to $27,632 in 1977.

In his own behalf defendant testified that every time he called plaintiff on the phone to talk about Terryl, plaintiff got mad and told him to come and get Terryl, so he did. He also stated that he adjusted the support payments when the children were with him, that he never took the children without talking to plaintiff first, and that he didn't know that he should have asked the court's permission to withhold support. He admitted on cross-examination that he did consult a lawyer at one time to have papers prepared for a change of custody.

The trial court ruled that defendant was entitled to $21.66 equitable credit for each of the 296 weeks when a child was not in plaintiff's custody up to the date the petition was filed; that defendant was current as to support accruing after the petition was filed on June 6, 1978; that defendant owed $461 arrearages without interest; and that henceforth defendant shall pay $40 per week for the support of Carter and $40 for

Robin if she is returned to plaintiff; and that defendant shall pay $120 for plaintiff's attorney's fees and costs. Plaintiff then perfected this appeal.

■■■ Our consideration of the rights of the parties in this case must begin with the general principle that child support payments become a vested right as they accrue and cannot be unilaterally terminated by the defendant (*Munck v. Munck* (1st Dist. 1978), 62 Ill. App. 3d 223, 378 N.E.2d 1252), and neither can they be modified as to amount or time of payment. (*Baldwin v. Baldwin* (3d Dist. 1974), 21 Ill. App. 3d 380, 315 N.E.2d 649.) In the proper case, however, courts will give effect to an agreement between the parties to waive or reduce payments, or courts will apply the doctrine of equitable estoppel. (*In re Estate of Neirinck* (3d Dist. 1978), 62 Ill. App. 3d 189, 379 N.E.2d 356; *Ellingwood v. Ellingwood* (1st Dist. 1975), 25 Ill. App. 3d 587, 323 N.E.2d 571.) Equitable estoppel arises where the voluntary conduct of one party precludes that party from asserting rights against another person who has, in good faith, relied upon such conduct to change his position for the worse. (*McAdams v. Scullin* (5th Dist. 1977), 53 Ill. App. 3d 374, 368 N.E.2d 1036.) Thus it has been held that where the mother, who was the custodial parent under the divorce decree, either consented to or acquiesced in a child living with the father and the father supported the child, the doctrine of equitable estoppel may be applied to allow the father an equitable credit against his support arrearages for the time he had actual custody. (*Strum v. Strum* (4th Dist. 1974), 22 Ill. App. 3d 147, 317 N.E.2d 59.) The test has also been stated more broadly to be whether the conduct of the plaintiff-mother, as shown by all the circumstances of the case, was sufficient to justify the conclusion that the enforcement of the decree as to unpaid support would be unjust and inequitable to the defendant-father. *Martin v. Comer* (3d Dist. 1975), 25 Ill. App. 3d 1038, 324 N.E.2d 240.

■ In cases allowing an equitable credit against support arrearages, the essential element of detrimental reliance has been present; that is, the court has found that the defendant-father relied upon the plaintiff-mother's conduct indicating her willingness to give up or modify her right to custody or support. (*E.g., Martin v. Comer; Strum v. Strum.*) Equitable estoppel is not created by plaintiff's failure to demand payment of support arrearages (*Ellingwood v. Ellingwood* (1st Dist. 1975), 25 Ill. App. 3d 587, 323 N.E.2d 571), or by the mere passage of time (*Martin v. Comer*). Instead, defendant has the burden of proving estoppel by clear, precise and unequivocal evidence if he seeks to avoid plaintiff's vested right to support. (*Ellingwood.*) When the father feels he should not have to make support payments while he has custody, his remedy is to apply to the court for modification of the support order as to future installments. *McAdams v. Scullin* (5th Dist. 1977), 53 Ill. App. 3d 374, 368 N.E.2d 1036.

■■ Applying these general principles to the case at bar, we find that,

with one exception, defendant did *not* prove by clear, precise and unequivocal evidence that he relied upon any apparent willingness of plaintiff to give up custody when he withheld support payments. Defendant testified that he talked to plaintiff each time before taking the children, but this statement gave no hint as to whether plaintiff concurred in his proposal. Later he said that, in the case of Terryl, plaintiff got mad and told him to come and get her. Even this does not necessarily indicate plaintiff's consent to a change of custody but could mean only that she was willing to let Terryl visit defendant. Plaintiff's testimony, on the other hand, was clear and unwavering that she opposed every change of custody vociferously except for Terryl's last move back to defendant in June of 1976, where she remained for 25 weeks until her marriage. When questioned about this incident, plaintiff said that she did not object to Terryl's departure that time since she had gone 2½ years previously. Aside from the 25-week period, we find that defendant did not sustain his burden of proving equitable estoppel as to his liability for support payments, and hence, that the decree of the trial court was contrary to the manifest weight of the evidence. Therefore, this cause must be remanded to the trial court with directions to vacate the order and to recompute defendant's arrearages.

Plaintiff has also directed our attention to *Storm v. Storm* (1st Dist. 1973), 9 Ill. App. 3d 1071, 293 N.E.2d 633, where the divorce decree provided that defendant father was to pay $60 per week for the four minor children of the parties. The court held that the amount was for all four children collectively and could not be automatically reduced *pro rata* as each child reached its majority. Since defendant did not seek modification before the right to child support became vested in plaintiff-mother, he remained obligated to pay the full amount even though one child reached the age of majority. (See also *Voss v. Voss* (3d Dist. 1974), 23 Ill. App. 3d 312, 319 N.E.2d 72.) Although neither *Storm* nor *Voss* involved the doctrine of equitable estoppel, we think the underlying policy of those decisions can properly be considered by the trial court upon remand of this cause.

Plaintiff next contends that the trial court erred in finding that defendant was current in his support payments from June 6, 1978, the date her petition for arrearages was filed, until the date of the order, August 18, 1978. Defendant paid only $21.65 per week for Carter during that period. The rule in such case is that, once a petition for modification of support is filed and upon showing of material change of circumstances, support payments can be modified as of the date the petition was filed, but the payments due previous to the petition cannot be modified. (*Dixon v. Dixon* (1st Dist. 1977), 45 Ill. App. 3d 934, 360 N.E.2d 486.) Here defendant's petition to modify the decree by reducing his support

payments was not filed until August 9, 1978, and consequently the trial court erred in giving effect to a modification as of June 6, 1978. Since Terryl was emancipated by this time, and since defendant continued to pay Carter's support, the real point at issue here is defendant's liability for Robin's support during the two-month interval from June 6 to August 9, when she was not in plaintiff's custody but rather was a ward of the court. We see nothing unfair about requiring defendant to pay Robin's support to plaintiff for that period in view of plaintiff's uncontradicted testimony that she is liable to the Department of Children and Family Services for Robin's support.

■■ Finally, plaintiff argues that the trial court improperly denied her interest on all past due support payments, citing *Ellingwood v. Ellingwood* (1st Dist. 1975), 25 Ill. App. 3d 587, 323 N.E.2d 571. We think the controlling case here is *In re Estate of Neirinck* (3d Dist. 1978), 62 Ill. App. 3d 189, 379 N.E.2d 356, where this court ruled that the denial of a claim for interest on child support arrearages was within the discretion of the trial court. Similarly we cannot say that the trial court here abused its discretion in refusing to award interest.

For the reasons stated, we reverse the order of the trial court, and remand to the Circuit Court of La Salle County with directions to recompute the arrearages owed by defendant consistent with the views expressed in this opinion.

Reversed and remanded with directions.

SCOTT, P. J., and BARRY, J., concur.